## BOB SUTTON *v.* THE STATE.

1. DYING DECLARATIONS.—In a trial for murder the court admitted, as dying declarations, statements of the deceased after he was shot; but subsequently withdrew them from the jury, and refused to allow the defense to prove that the deceased made other statements contradictory of those which had been admitted and withdrawn—but which other statements were neither *res gestæ* nor dying declarations. *Held*, in view of the predicate laid, and of the entire record, that it is not clear that the declarations were not legal evidence against the accused; and, if they were, their withdrawal was error in his favor, and not to his prejudice. But, if they were not legal evidence against him, their admission and subsequent withdrawal did not entitle him to introduce the contradictory statements otherwise · inadmissible.

2. MURDER—CHARGE OF THE COURT.—The jury were properly instructed on the · three degrees of culpable homicide, and on the law of self-defense against,. a threatened attack; but the court omitted to charge the law of self-defense irrespective of threats by the deceased against the accused.: There being evidence requiring such omitted instruction as part of the. law applicable to the case, its omission was error, whether asked or not.. .

APPEAL from the Criminal Court of the city of Paris,. county of Lamar. Tried below before the Hon. J. Q.. CHENOWITH.

The parties and nearly all the witnesses in this case were negroes. The deceased, who was known both as Dan Harmon and Dan Edwards, was the father-in-law of the appellant.

In the opinion of this court will be found a complete development of the case so far as concerns the dying declarations, which, of themselves, disclose the version of the con--

flict relied on by the prosecution. Two sons of the deceased testified that they saw the affair, and their account of it concurred with the declarations in placing the deceased in a retreating attitude, and the accused in an aggressive one, at and previous to the shooting.

*Per contra,* a son of the accused and another witness for defense stated that they saw the killing, and that the deceased had a brick-bat in one hand and an open pocket-knife in the other, and was at the muzzle of the accused's gun, and "trying to get round it" to reach the accused when the latter fired.

Another witness for the defense swore that, shortly before the killing, the deceased spoke to him about a difficulty pending between himself and the accused, about some cotton, and said that he "would kill Bob, or Bob must kill him." That witness communicated the threat to the accused, who professed to know nothing of such a difficulty.

*Johnson & Miner,* for the appellant.

*H. H. Boone,* Attorney General, for the State.

WINKLER, J. The appellant was indicted, tried, and convicted in the late criminal district court of the city of Paris, on an indictment charging him with the murder of one Dan Harmon. The indictment charges that the accused shot the deceased on November 1, 1871, inflicting upon him a mortal wound, of which he languished until November 10, 1871, on which last-named day the deceased died of the mortal wound aforesaid.

The indictment was filed December 17, 1874. On February 18, 1876, the accused was tried, and convicted of murder of the second degree, the punishment being assessed by the jury at confinement in the state penitentiary for a period of twelve years; and judgment of the court was entered accordingly. Motions for new trial and in arrest of judg-

ment were made, and being overruled, the accused has taken an appeal to this court.

The evident theory of the defense, as shown by the record and by the argument of counsel for the appellant, is that the killing of the deceased by the accused was an act done in the necessary defense of the accused against an attack made upon him by the deceased. In other words, that the killing was in self-defense. This view of the case is strengthened by the following extract from the written brief of appellant's counsel. In discussing the evidence and the rulings of the court upon the subject, they say : " The case was really narrowed, by appellant's evidence, to the question, Was the act justifiable as an act of self-protection ?" This theory of the defense virtually concedes two points : First, that the mortal wound was inflicted by the accused ; and, secondly, that the wound inflicted by the accused was the cause of the death of the deceased. But, as to these points, the evidence leaves no room for doubt ; it is abundantly shown that the accused shot and wounded the deceased, and that the wound caused the death of the deceased.

It appears in evidence that the rencounter in which the deceased was shot occurred on the plantation of Dr. Stell, and that, between the time the wound was inflicted and the time the deceased died, the wounded man was removed from Dr. Stell's place, in a wagon, a distance estimated by the witness at from five to six miles, to the place of a Mrs. Hopson, where death ensued. The wife of the deceased man testified that the deceased was shot on Friday and was removed on the following Wednesday, and that he lived fifteen days from the time of shooting ; and a question is raised as to whether the removal might not have had an unfavorable influence upon his condition. But it is not shown that such were the facts, or that he died from any other cause than the wound inflicted by the accused. There is no evidence whatever that the wounded man was neg-

lected or exposed, or that he was affected with any disease other than the gun-shot wound; so, there can be no doubt that he died from that cause and no other. The evidence very clearly settles this question.

A motion in arrest of judgment was made and overruled, and, whilst the ruling of the court is assigned as error, we fail to discover that any error was committed in overruling the motion; in fact, the question seems to have been abandoned as untenable, as far as we can gather from the argument of counsel here. The indictment was sufficient.

The remaining objections urged against the conviction, as shown by the motion for a new trial and in the assignment of errors, and by the several bills of exception taken on the trial, and as shown by the record, range themselves into two classes, involving questions on two propositions: 1st, as to the correctness, or otherwise, of the rulings of the court on the trial below in admitting evidence or excluding evidence; and, 2d, as to the correctness, or otherwise, of the charge of the court to the jury, both as to the general charge and also as to the special instructions asked by the accused. These two general propositions we propose to discuss, so far as deemed necessary, in the order stated.

The 1st bill of exceptions recites that on the trial the state proposed to prove the declarations of Dan Harmon as dying declarations, alleged to have been made two days before his death, having first laid the predicate therefor by the following testimony; and then follows the evidence upon which it is said the declarations of Harmon were admitted as dying declarations, giving the evidence of Charles Harmon, a son of the deceased, Dr. W. W. Stell, who had been a physcian, but had not practiced his profession for eight or ten years, Jordan Carter, and Caroline Edwards, the wife of the deceased. The bill of exceptions then proceeds: "Upon the above proof the district attorney proposed to prove the declarations of the deceased concerning the

difficulty between him and the defendant, and defendant objected, because a sufficient predicate had not been laid for said proof; and to the introduction thereof the defendant excepts."

In the statement of facts there is a portion of the evidence, opposite to which is placed this seeming note of explanation: "This was afterwards withdrawn from the jury." Marks on the statement of facts show that the withdrawal related to the following part of the evidence of the wife of the deceased: "Dan said he and Bob had been to town; he got home first. Bob came and quarreled with his [Bob's] wife about not having dinner for him. Dan said he asked Bob what he was quarreling about. Bob said, 'None of your business.' Dan said, 'She is my daughter, and it is my business.' Then Bob ordered him to leave the house. He went out, and then Bob ordered him out of the yard, and he [Dan] picked up a brick-bat and then went on, and looked back and saw Bob in the door with the gun. He attempted to get behind the shop. Bob shot him in the back. Dan said he had the brick under his arm; never told me that he said 'I will show you what I am going to do with the bat.' He never told me that he had said what he was going to do with Bob; did not tell me the reason why he would not go to town with Bob; did not tell me of any threats; did not tell me they were mad; did not tell me that he would not eat at Bob's; did not tell me they sent for a policeman to keep down a difficulty. Bob and Dan had been at some cross-questions before I left to go to Mrs. Hopson's. Dan said the quarrel grew out of a fuss between Bob and Sila." Sila was Bob's wife.

The following evidence, the statement of facts states, was introduced as evidence and then struck out:

Ben Wynn, for defense: "Dan told me if he had got to Bob he would have broken off his knife in him. Dan told me this in fifteen minutes after we had moved him to Andrew

Sutton's." These corrections or alterations appear in the statement of facts as signed by the counsel and approved by the judge.

Further light as to what the action of the court was on this subject may be gathered from the 5th ground set out in the motion for a new trial, which is as follows: "The defendant further says, that he has not had a fair and impartial trial, in this: that the court permitted the witness Caroline Edwards, *alias* Harmon, wife of deceased, to detail certain statements made by deceased as dying declarations, and afterwards voluntarily withdrew. them from the jury, and then refused to allow the defendant to *counteract* the effect of said declarations by showing what other and contradictory statements had been made by the deceased to Joe Pennybacker and Ben Wynn."

Taking the whole record on the subject, and viewing the confused and unsatisfactory statements of the bill of exceptions, the statement of facts, and the motion for a new trial, in the most favorable light for the defendant they are susceptible of, we conclude that they amount to this: That the court, in the first place, admitted the wife of the deceased to testify as to certain statements made by her husband, before his death, as to the nature of the quarrel between the accused and the deceased, and the conduct and acts of the parties on that occasion, upon the idea that those statements were admissible as dying declarations, and subsequently withdrew this declaration from the jury, endeavoring thereby to correct any mistake which might have been committed in admitting the statements as evidence in the first instance.

It is by no means clear that the statements mentioned, in so far as they related to the cause and reasons of the killing, were not admissible as dying declarations, from the character of the wound received, and the opinion of Dr. Stell, though not then, nor for some years previously, practicing

his profession; and from the deceased's statements to others concerning his condition, and his evident belief from the first that he would die, it is quite probable that the evidence, if it had been properly and fully developed, would have brought the statements within the rules of law prescribed for the admission of dying declarations; and from the unsatisfactory manner in which the record, taken altogether, places the subject, we are not prepared to decide that there was any error committed in admitting the testimony. But, conceding that the court erred in admitting this testimony, the error, if any in fact was committed, was corrected by the court afterward withdrawing it from the consideration of the jury.

If there was error in withdrawing this testimony from the jury, the accused ought not to be heard to complain, for the reason that the testimony withdrawn was against him. This, however, is not the ground of his complaint. On the contrary, he insists that the error was committed in allowing the testimony to go to the jury at all; that, the jury having heard the evidence, it necessarily made an impression on the minds of the jury, which could not be effaced by the withdrawal of the testimony from them; and, therefore, counsel insist that the accused should have been allowed the benefit of the witness Joe Pennybacker, as set out in his bill of exceptions No. 2, and of that of the witness Ben Wynn, as set out in his bill of exceptions No. 3. When, however, we look to the said bills of exceptions Nos. 2 and 3, we find that the testimony offered and excluded was neither dying declarations nor *res gestæ*, but was simply hearsay testimony, not coming within any known rule of evidence admitting such testimony. Considering this whole subject in connection with the other evidence in the case, we fail to discover any material error committed on the trial below either in admitting or excluding evidence, to the prejudice of the rights of the accused.

As to the charge of the court, two specific objections thereto have been urged on the part of the appellant. One objection is that the charge does not properly inform the jury as to the legal distinction between murder and manslaughter; and the second is that the jury was not properly instructed as to the law of self-defense. From a careful examination of the charge given it does not appear to be obnoxious to the first objection urged, to wit, that it fails to define the distinction between murder and manslaughter. There is no room to suppose that the jury could have been misled by the charge. Murder of the first and of the second degrees are defined in the charge substantially as they are defined in the Code; and so of manslaughter, with a statement as to the punishment affixed by law to each of the three grades of offense.

As to the other objection, the charge asked by the defendant and refused, on the subject of self-defense when the killing was upon threats against the accused, was substantially given in the general charge, and there was, therefore, no error in refusing the instruction asked. This charge, however, related alone to the rights of the accused in case the jury should believe that the killing was a necessary protection against a threatened attack, then about to be carried out.

But, in view of the evidence adduced on the trial, and bearing in mind the nature of the defense necessarily relied on, we are of the opinion the rights of the accused were prejudiced by the failure of the court to charge the law of self-defense otherwise than with reference to threats against the accused. Proper instructions on this subject were required by the evidence, as a part of the law of the case, which the judge should have given, whether asked or not. *Marshall* v. *The State*, 40 Texas, 200.

In view of another trial, it may be proper to say that there is an intimation that the accused had once before been

tried and convicted of murder of the second degree, which was a virtual acquittal of murder of the first degree. It would, therefore, be error to charge that the accused could now be convicted of a higher grade of the offense than murder of the second degree ; and, hence, it would be error to charge as to murder in the first degree, further than rendered necessary in defining the lesser grades of the offense.

The judgment is reversed and the case remanded.

*Reversed and remanded.*